UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SCHEKERA BLAIR-SCOTT<br><br>*Plaintiff*,<br><br>v.<br><br>OFFICER VIJAY SHARMA, *et al.*,<br><br>*Defendants.* | No. 20-cv-2258 (DLF) |

## MEMORANDUM OPINION

Plaintiff Schekera Blair-Scott brings this action against the District of Columbia (District) and District of Columbia Metropolitan Police Department (MPD) Officers Vijay Sharma and Lauren Griffin, alleging violations of her constitutional rights under the Fourth Amendment and various state law torts. *See* Am. Compl. ¶¶ 14–42, Dkt. 16. Before the Court is the District's Renewed Motion to Dismiss the Amended Complaint, Dkt. 15.[1] For the reasons that follow, the Court will grant in part and deny in part the District's motion.

### I.   BACKGROUND

#### A.   Factual Background

On June 13, 2019, Blair-Scott was arrested by MPD Officers Sharma and Griffin for driving without a license. Am. Compl. ¶ 7. Blair-Scott alleges that, despite being a licensed driver at the time of her arrest, the officers grabbed and searched her without her consent, used excessive force, and imprisoned her for approximately 48 hours until her criminal charges were

---

[1] The District's motion is limited to the federal claims that Blair-Scott has brought under 42 U.S.C. § 1983 against the District. *See* Mot. to Dismiss. Officers Sharma and Griffin filed an answer to Blair-Scott's amended complaint. *See* Answer, Dkt. 28.

dismissed. *Id.* As a result of her arrest, Blair-Scott alleges that she suffered injuries to her arms and wrists and emotional distress. *Id.* ¶¶ 9–10. She seeks compensatory and punitive damages. *Id.* at 8.

### B.      Procedural History

On May 29, 2020, Blair-Scott filed this action in the Superior Court of the District of Columbia. *See* Compl., Dkt. 1-2. On August 17, 2020, the District removed the case to this Court. *See* Notice of Removal, Dkt. 1. Since then, Blair-Scott has filed an amended complaint that alleges seven counts against the District and MPD Officers Sharma and Griffin: false arrest (Count I), Am. Compl. ¶¶ 14–17, false imprisonment (Count II), *id.* ¶¶ 18–21, assault (Count III), *id.* ¶¶ 22–25, battery (Count IV), *id.* ¶¶ 26–29, negligence (Count V), *id.* ¶¶ 30–32, and federal law claims under 42 U.S.C. § 1983 for violations of her Fourth Amendment rights (Counts VI and VII), *id.* ¶¶ 33–42. The District's renewed motion to dismiss,[2] *see* Mot. to Dismiss, is now ripe for review.

## II.     LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement,

---

[2] The Court denied without prejudice the District's initial motion to dismiss to allow Blair-Scott an opportunity to amend her complaint, as provided by right under Rule 15(a) of the Federal Rules of Civil Procedure. *See* Min. Order of Sept. 24, 2020.

but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. ANALYSIS

The District, but not the officers, has moved to dismiss Blair-Scott's § 1983 claims under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). The Court will first consider whether Blair-Scott has stated a claim against the District under § 1983, and then whether it is proper for the Court to retain supplemental jurisdiction over Blair-Scott's state law claims.

####  A.    Blair-Scott's § 1983 Claims against the District (Counts VI and VII)

To state a claim for municipal liability, a plaintiff must allege that "action pursuant to official municipal policy" caused her injury. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658,

691–94 (1978).³  "[A] municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).  "There are four basic categories of municipal action [a plaintiff] may rely on to establish municipal liability: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference." *Clay v. District of Columbia*, 831 F. Supp. 2d 36, 43–44 (D.D.C. 2011) (internal quotation marks omitted).

Blair-Scott's amended complaint does not allege that her constitutional injuries were the result of an express municipal policy or the action of a final municipal policymaker. *See* Am. Compl.  Rather, she claims that "problems of false arrest and the use of excessive force have continued since [1989] . . . and have been tolerated by the District of Columbia[,] which has remained deliberately indifferent to [the] problem," *id.* ¶ 13, such that it "had a custom, policy, or practice of tolerating [such constitutional violations]," *id.* ¶¶ 37, 42.  Blair-Scott thus appears to allege both that the District "knowingly ignore[d] a practice that was consistent enough to constitute custom," *see Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)), and "neglected to respond to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the

---

³ "[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry.  First, the court must determine whether the complaint states a claim for a predicate constitutional violation.  Second, if so, the court then must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306, (D.C. Cir. 2003) (internal citations omitted).  Because the parties' present dispute is confined to the second step of this inquiry, *see* Mot. to Dismiss; Pl.'s Opp'n, Dkt. 17, the Court limits its analysis to the question of whether Blair-Scott's amended complaint plausibly alleges that a custom or policy of the District caused the officers to violate her constitutional rights.

need w[ould] result in constitutional violations," *see Bell v. District of Columbia*, 82 F. Supp. 3d 151, 156 (D.D.C. 2015) (internal quotation marks omitted).

To establish municipal liability in a custom or practice case, a plaintiff must "demonstrate a persistent, pervasive practice of the city officials . . . which, although not officially adopted, was so common and settled as to be considered a custom or policy." *Tyson v. District of Columbia*, No. 20-cv-1450, 2021 WL 860263, at *5 (D.D.C. Mar. 8, 2021) (internal quotation marks omitted). Likewise, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted). The Supreme Court has made clear that "deliberate indifference" in the context of municipal liability requires a significant showing, stating that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 61 (internal quotation marks omitted).

Here, Blair-Scott alleges that she was arrested and detained without cause, and that she was "subject to excessive force" that caused "injuries to her arms and wrists and pain and suffering" that resulted in "medical treatment." Am. Compl. ¶¶ 7, 9–10. As evidence that these alleged constitutional violations were the product of a broader District custom or practice or deliberate indifference, Blair-Scott points to other instances in which the District and its officers have been accused of false arrest and using excessive force. *See id.* ¶ 13. According to Blair-Scott, twenty such lawsuits were filed between 1989 and 1997; another eight administrative complaints were filed based on similar actions by District officers on June 1, 2020; and "hundreds" of other complaints have been filed. *Id.*

Together, these allegations do not constitute a claim of municipal liability.  To begin, the twenty lawsuits that were allegedly filed between 1989 and 1997 occurred twenty-two years or more before the alleged constitutional violations at issue.  *Id.* ¶¶ 7, 13.  They are thus too far removed in time to establish a "persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers" in 2019.  *See Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (holding that a plaintiff failed to establish municipal liability claim where the plaintiff relied on a report "issued nearly four years prior" to the plaintiff's arrest and based on data gathered between 7 to 11 years before the plaintiff's arrest).  Even if these civil actions were not too attenuated in time, Blair-Scott makes no effort to allege how these civil actions were similar to her own, *see Connick*, 563 U.S. at 62–63 (explaining that previous incidents must be "similar to the violation at issue" in order to put the municipality "on notice that specific policy changes were necessary"), and twenty lawsuits, some of which were admittedly resolved in favor of the District, *see* Pl.'s Opp'n at 5, and that occurred across a decade in a city the size of Washington, D.C., do not demonstrate "practices so persistent and widespread as to practically have the force of law."  *See Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013); *see also Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (explaining that if a "catalog of disquieting events" presented without any "detail at all on the[] incidents" "were adequate to make out a § 1983 case, then practically every large metropolitan police force . . . could be targeted for such liability").

Nor has Blair-Scott plausibly alleged deliberate indifference.  Blair-Scott's allegation that twenty lawsuits were filed more than twenty years ago does not show that the District was deliberately indifferent to a known or obvious risk in 2019.  *See, e.g.*, *Lane v. District of Columbia*, 72 F. Supp. 3d 215, 221–22 (D.D.C. 2014) (holding that 15 excessive-force

6

complaints from 2005 to 2011 "d[id] not establish a pattern of relevant misconduct" so as to put MPD officials "on notice of probable misconduct"); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–52 (5th Cir. 2009) (finding twenty-seven incidents of excessive force over a period of four years in Fort Worth did "not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct"); *Ramos v City of Chicago*, 707 F. Supp. 345, 347 (N.D. Ill. 1989) ("[A]lleging six incidents of police brutality over a ten year period in a city as large as Chicago with a police force in excess of 10,000 members is unremarkable, and in no way indicates a policy or custom."). And Blair-Scott has not alleged any deficiency in the District's training of MPD officers. *See Lane*, 72 F. Supp. 3d at 223.

Next, the allegations concerning arrests on June 1, 2020 are not germane to Blair-Scott's municipal liability claim because any constitutional violation that occurred *after* Blair-Scott's arrest could not have put the District on actual or constructive notice at the time of her arrest. *See Connick*, 563 U.S. at 63 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the cit[y] and the opportunity to conform to constitutional dictates . . . .") (internal quotation marks omitted).

Finally, Blair-Scott's allegation that there have been "hundreds" of other complaints is conclusory,[4] particularly in light of the generalized manner in which it is pleaded. "The

---

[4] In her opposition, Blair-Scott speculates that more than 300 complaints were filed in the District between 1989 and 1997. *See* Pl.'s Opp'n at 4 n.1. The factual allegations, however, from which Blair-Scott extrapolates are wholly absent from her amended complaint. *See* Am. Compl. ¶ 13; *Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 89 (D.D.C. 2016) ("[A] complaint may not be amended by a brief in opposition to a motion to dismiss."). And even if these allegations were accepted as true, they would not support a claim of municipal liability because, like the twenty lawsuits alleged in Blair-Scott's complaint, they are too attenuated in time.

complaint does not, for instance, state the number, nature, and timing of the complaints of police misconduct; [or] the identity of the officers who were the subject of the complaints . . . ." *Bell*, 82 F. Supp. 3d at 159.  And, as with the twenty complaints described above, Blair-Scott fails to offer any reason to believe these unspecified complaints concerned constitutional violations "similar to the violation at issue" in her case. *See Connick*, 563 U.S. at 62–63.  "[Blair-Scott's] generalized assertion of ignored and unanswered complaints of . . . police misconduct amount to little more than an unadorned, the-defendant-unlawfully-harmed-me accusation that does not pass muster under *Iqbal*." *See Bell*, 82 F. Supp. 3d at 159. (internal quotation marks omitted).

In sum, Blair-Scott's allegations do not allow the Court to draw a reasonable inference that the District "knowingly ignore[d] a practice that was consistent enough to constitute custom," *see Warren*, 353 F.3d at 39 (citing *Praprotnik*, 485 U.S. at 130), or "neglected to respond to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need w[ould] result in constitutional violations," *Bell*, 82 F. Supp. 3d at 156 (internal quotation marks omitted).  As a result, the Court will grant the District's motion to dismiss with respect to Counts VI and VII.

**B.    Blair-Scott's State-Law Claims (Counts I–V)**

Blair-Scott does not address whether this Court should retain jurisdiction over her state law claims against the District, *see* Pl.'s Opp'n, but "[t]he Court has an affirmative obligation to consider its own jurisdiction, and it may do so sua sponte at any point during litigation," *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 190 (D.D.C. 2018) (internal quotation marks and citation omitted).

Where, as here, a court dismisses all federal claims against a defendant, it has the discretion under 28 U.S.C. § 1367 to retain supplemental jurisdiction over any remaining state

law claims.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (describing supplemental jurisdiction as a "doctrine of discretion" and not of "right"); *Diven v. Amalgamated Transit Union Intern. and Loc. 689*, 38 F.3d 598, 600–02 (D.C. Cir. 1994).  The relevant statute grants the Court supplemental jurisdiction "over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  In deciding whether to retain jurisdiction over state law claims, courts consider "judicial economy, convenience, and fairness to litigants," as well as issues of comity.  *See Gibbs*, 383 U.S. at 726.

The remaining state law claims against the District arise out of the same underlying allegations as the § 1983 claims against the officers, *see* Am. Compl., and thus share a "common nucleus of operative fact," *Simmons v. District of Columbia*, 750 F. Supp. 2d 36, 41 (D.D.C. 2010) (retaining jurisdiction over state law claims against the District because remaining Fourth Amendment claims against corrections officers arose out of the same body cavity search).  At least at this time, the Court will retain jurisdiction over Blair-Scott's state law claims against the District.

## CONCLUSION

For the foregoing reasons, the Court grants the District's motion to dismiss with respect to Counts VI and VII and retains supplemental jurisdiction over Counts I through V.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

July 21, 2021