**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SCHEKERA BLAIR-SCOTT,

        *Plaintiff*,

      v.

DISTRICT OF COLUMBIA, *et al.*,

        *Defendants*.

20-cv-02258 (JMC)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia (the District), Metropolitan Police Department (MPD) Officer Lauren Griffin, and MPD Officer Vijay Sharma respectfully move for summary judgment under Fed. R. Civ. P. 56(c). The Court should enter summary judgment in Defendants' favor because, based on the undisputed record, Plaintiff's remaining constitutional and common law claims. A memorandum of points and authorities in support of this motion, a statement of undisputed material facts, exhibits, and a proposed order are attached for the Court's consideration.

Date: November 15, 2023

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

/s/ *Steven Rubenstein*
STEVEN RUBENSTEIN [1013094]
Acting Chief, Civil Litigation Division Section II

/s/ *Zita Orji*
ZITA ORJI [1740117]
Assistant Attorney General

400 6th Street, N.W.
Washington, D.C. 20001
(202) 769-6181 (cell)
(202) 741-0429 (fax)
zita.orji1@dc.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCHEKERA BLAIR-SCOTT, | |
| *Plaintiff*, | |
| v. | 20-cv-02258 (JMC) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants*. | |

## <u>DEFENDANTS' STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE DISPUTE</u>

In support of their motion for summary judgment, and under Fed. R. Civ. P. 56(c) and LCvR 7(h)(1), Defendants District of Columbia (the District), Metropolitan Police Department (MPD) Officer Lauren Griffin, and MPD Officer Vijay Sharma (collectively, "Defendants") submit the following statement of material facts for which there is no genuine dispute.

1. On June 13, 2019, Plaintiff Schekera Blair-Scott was pulled over on 1111 14th Street NW, Washington D.C. by Officer Vijay Sharma and Officer Joseph Rimel for making an improper U-turn.  Exhibit 1, Deposition of Plaintiff Schekera Blair-Scott (Blair-Scott Depo.) 23:21–24:07; Exhibit 2, Jun. 13, 2019 Blair-Scott Arrest Report.

2. During the traffic stop, Plaintiff gave Officer Sharma her Connecticut driver's license. Ex. 1, Blair-Scott Depo. 27:19–29:8; Exhibit 3, Officer Vijay Sharma Body-Worn Camera (BWC) Footage (Sharma BWC) 03:11–03:27.  Exhibit 4, Officer Joseph Rimel BWC Footage (Rimel BWC) 03:00–03:17.

3. After Officer Sharma and Officer Rimel returned to their car, Officer Rimel ran Blair-Scott's driver's license for a permit status check in the Washington Area Law

Enforcement System (WALES).[1]  Ex, 2, Blair-Scott Arrest Report; Ex. 4, Rimel BWC 04:08–08:35.

4.  WALES is a regional police information system which, through the use of a computer serves the Washington, D.C. area. The System provides data on motor vehicles, wanted persons, and stolen articles. Exhibit 5, MPD General Order 302.6.

5.  WALES showed that Plaintiff's Connecticut driver's license was suspended.  Ex. 3, Sharma BWC 04:39–09:02; Ex. 4, Rimel BWC 04:08–08:35; Exhibit 6, WALES Report; Exhibit 7, Blair-Scott Driver's License.

6.  After running the driver's license in WALES twice, Officer Rimel checked with the Second District dispatcher to check the status of Plaintiff's driver's license and the

---

[1]    WALES is a database maintained by the Metropolitan Police Department (MPD) that contains motor vehicle information such as drivers' licenses and vehicle registrations.  *See United States v. Hutchinson*, 408 F.3d 796, 799 (D.C. Cir. 2005).  As the D.C. Circuit found in *Hutchinson*:

> "WALES" is a database maintained by the Metropolitan Police Department that allows the police to input local data and to communicate with other law enforcement agencies nationwide. It contains criminal history information regarding arrests, address information, physical description (race, sex, date of birth, height, weight, any scars or markings), police and correctional identification numbers, and warrant information. It also contains motor vehicle information (driver's licenses, vehicle registrations, vehicle identification numbers), social security numbers, aliases, fingerprint classifications, warnings about particular persons, and attempts to locate both missing cars and people. In addition, "WALES" interfaces with several other law enforcement records systems, including the National Law Enforcement Telecommunication System ("NLETS"), which allows an exchange of information between individual State databases and is maintained by the Federal Bureau of Investigation ("FBI"); the Criminal Justice Information System ("CJIS"), which contains arrest information from the police district or central cell (jail); and the National Crime Information Center ("NCIC"), which is maintained by the FBI. Thus, an officer calling in for a "WALES" check, using a given name, date of birth, or social security number would have the benefit of the computer search of multiple files in the system as a means of verifying information that has been provided.

*Id.*

dispatcher also informed Officer Rimel that Plaintiff's driver's license was reported to be suspended. Ex. 3, Sharma BWC, 09:09–11:00.; Ex. 4, Rimel BWC 09:25–11:00.; Exhibit 8, Declaration of MPD Officer Vijay Sharma (Officer Sharma Decl.) ¶¶ 10–12.

7. Officer Sharma returned to Plaintiff's vehicle, asked Plaintiff to step out of the car, and placed Plaintiff in handcuffs, and Officer Rimel informed Plaintiff her driver's license had been reportedly suspended since September 2018. Ex. 3, Sharma BWC, 11:40–12:38.; Ex. 4, Rimel BWC 11:40–12:38.; Ex. 8, Officer Sharma Decl. ¶¶ 13–14.

8. Officer Sharma then informed Plaintiff that driving with a suspended driver's license was an arrestable offense in the District of Columbia. Ex. 3, Sharma BWC, 13:09–13:15; Ex. 4, Officer Rimel BWC 12:55–12:58.

9. Plaintiff did not physically resist her arrest and Officer Sharma used no force beyond routine handcuffing to effectuate Plaintiff's arrest. Ex. 3, Sharma BWC, 11:40–12:38.; Ex. 4, Rimel BWC 11:40–12:38. Ex. 8, Officer Sharma Decl. ¶ 15.

10. After Plaintiff was arrested, MPD Officer Lauren Griffin arrived on the scene and searched Plaintiff by using the back of her gloved hand to perform a search by patting on the outside of Plaintiff's clothes and removing Plaintiff's hat before placing Plaintiff into a police transport. Ex. 3, Sharma BWC 25:03–25:33; Exhibit 9, Officer Lauren Griffin Body Worn Camera (BWC) Footage (Griffin BWC) 02:00–05:55.; Exhibit 10, Declaration of Officer Lauren Griffin (Officer Griffin Decl.) ¶ 5.

11. Officer Griffin only searched Plaintiff at the scene of the arrest. Ex. 10, Officer Griffin Decl. ¶ 9.

12. While in the police transport, Plaintiff complained that she was claustrophobic and would suffer a panic attack in the transport and requested another police vehicle. Ex. 3, Sharma BWC 29:30–30:00.; Ex. 9, Griffin BWC 06:15–07:15.; Ex. 10, Officer Griffin Decl. ¶ 7.

13. Plaintiff was then placed in a police SUV and then transported to the Second District Police Station for processing. Ex. 9, Officer Griffin BWC Footage 24:59–25:20.; Ex. 10, Officer Griffin Decl. ¶ 8.

14. At no point during the encounter on the scene did Officer Sharma or Officer Griffin threaten to use force toward Plaintiff. Ex. 3, Sharma BWC 00:00–30:00; Ex. 9, Griffin BWC 00:00–25:20.; Ex. 8, Sharma Decl. ¶ 15.; Ex. 10, Officer Griffin Decl. ¶ 6.

15. Plaintiff was charged with Driving with No Permit. Ex. 2, Blair-Scott Arrest Report; Ex. 7.

16. Plaintiff did not request medical assistance or complain of any injuries while on the scene of her arrest. Ex. 3, Sharma BWC 13:09–36:27.; Ex. 8, Officer Sharma Decl. ¶ 20.; Ex. 9, Griffin BWC 02:00–25:20; Ex. 10, Officer Griffin Decl. ¶ 10.

17. At MPD's Second District Station, MPD Sergeant John Hedgecock explained to Plaintiff that, because of the Pretrial Services Agency for the District of Columbia's determination that, according to their records, Plaintiff was on probation for assault in another jurisdiction, Plaintiff had to remain in custody until the arraignment hearing the next morning. Exhibit 11, Sergeant John Hedgecock Body Worn Camera (BWC) Footage 05:52–06:05.

18. After Plaintiff requested medical attention at the Second District Station, Plaintiff was transported by Officer Alicia Smith to Sibley Hospital where she informed the medical staff that she was experiencing shortness of breath, chest pains, and a headache. Exhibit

12, Officer Alicia Smith Body Worn Camera (BWC) Footage 06:00–37:26; Exhibit 13,

Officer Alicia Smith BWC Footage 04:33–05:01.

19. On June 14, 2019, Plaintiff was released from police custody.  Ex. 1, Blair-Scott Depo.

50:14–50:21.

Date:  November 14, 2023                          Respectfully submitted,


                                                  BRIAN L. SCHWALB
                                                  Attorney General for the District of Columbia

                                                  STEPHANIE E. LITOS
                                                  Deputy Attorney General
                                                  Civil Litigation Division

                                                  */s/ Steven N. Rubenstein*
                                                  STEVEN N. RUBENSTEIN [1013094]
                                                  Acting Chief, Civil Litigation Division Section II

                                                  /s/ *Zita Orji*
                                                  ZITA ORJI [1740117]
                                                  Assistant Attorney General
                                                  400 6th Street, N.W.
                                                  Washington, D.C. 20001
                                                  (202) 769-6181
                                                  zita.orji1@dc.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| SCHEKERA BLAIR-SCOTT, |
| *Plaintiff*, |
| v. |
| DISTRICT OF COLUMBIA, *et al.*, |
| *Defendants*. |

1:20-cv-02258 (JMC)

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

After pulling Plaintiff over on the evening of June 13, 2019 for an improper U-turn, Metropolitan Police Department (MPD) Officers Vijay Sharma and Joseph Rimel ran a permit search and learned that Plaintiff's out-of-state driver's license was reportedly suspended. The officers ran the search a second time and then asked their dispatcher to confirm the result, which she did. Officer Sharma then arrested Plaintiff for driving with a suspended license and handcuffed Plaintiff without incident, before MPD Officer Lauren Griffin arrived on the scene to perform a search of Plaintiff incident to her arrest, also without incident. Plaintiff now brings constitutional claims under the Fourth Amendment against Officers Sharma and Griffin and common law claims against Defendants District of Columbia (the District), Officer Griffin, and Officer Vijay Sharma (collectively, "Defendants").

Defendants move for summary judgment on Plaintiff's remaining claims. *First*, Plaintiff's Fourth Amendment claims against the individual Defendants fail because Plaintiff's arrest was supported by probable cause. *Second*, Plaintiff's Fourth Amendment excessive force

claims against the individual Defendants fail because they used no excessive force to arrest or search Plaintiff. *Third*, Officers Sharma and Griffin are alternatively entitled to qualified immunity. *Fourth*, Plaintiff's common law false arrest and false imprisonment claims fail because her arrest was supported by probable cause. *Fifth*, Plaintiff's common law assault and battery claims lack merit because Plaintiff's arrest was lawful and the officers did not use clearly excessive force to arrest and search Plaintiff. *Finally*, Plaintiff's negligence claim fails because it is indistinguishable from her common law false arrest claim, she has failed to establish a national standard of care, and her arrest was supported by probable cause. For these reasons, discussed in greater detail below, the Court should grant summary judgment in Defendants' favor.

## FACTS

On June 13, 2019, Plaintiff Scherkera Blair-Scott was pulled over by MPD Officer Vijay Sharma and Officer Joseph Rimel at 1111 14th Street NW for making an improper U-turn. Defs.' Statement of Material Facts For Which There Is No Genuine Dispute (DSMF) ¶ 1. During the traffic stop, Plaintiff gave the officers her Connecticut driver's license. *Id*. ¶ 2. Officer Sharma and Officer Rimel returned to their car, and Officer Rimel ran Plaintiff's driver's license for a permit status check in the Washington Area Law Enforcement System (WALES)/National Crime Information Center (NCIC). *Id*. ¶ 3. WALES is a regional police information system which, through the use of a computer serves the Washington, D.C. area. The System provides data on motor vehicles, wanted persons, and stolen articles. *Id*. ¶ 4 WALES indicated that Plaintiff's driver's license was suspended. *Id*. ¶ 5. Officer Rimel ran the license for a second time in WALES and then radioed the Second District Dispatcher to confirm the

status of Plaintiff's license, the dispatcher confirmed Plaintiff's driver's license was suspended. *Id*. ¶ 6.

Officer Sharma returned to Plaintiff's vehicle, asked Plaintiff to step out of the car, placed Plaintiff in handcuffs, and informed Plaintiff she was under arrest because her driver's license had been suspended since September 2018. *Id*. ¶ 7.  Officer Sharma informed Plaintiff that driving with a suspended driver's license was an arrestable offense in the District. *Id*. ¶ 8. Plaintiff did not physically resist her arrest and Officer Sharma used no force beyond routine handcuffing to effectuate Plaintiff's arrest. *Id*. ¶ 9.

After Plaintiff was placed under arrest, Officer Lauren Griffin arrived on the scene. *Id*. ¶ 10.  Officer Griffin used her gloved hand to perform a search, patting the outside of Plaintiff's clothes and searching Plaintiff's hat. *Id*.  Plaintiff was then placed into a police transport. *Id*. Officer Griffin only searched Plaintiff at the scene of the arrest. *Id*. ¶ 11.  While in the police transport, Plaintiff complained that she was claustrophobic and would suffer a panic attack in the transport and requested another vehicle. *Id*.  Plaintiff was then placed in a police SUV and then transported to the Second District Police Station for processing. *Id*. ¶ 13.  Plaintiff was charged with Driving with No Permit. *Id*. ¶ 15.  During Plaintiff's arrest and search, neither Officer Sharma nor Officer Griffin made any threats to use force toward Plaintiff. *Id*. ¶ 14.  Plaintiff did not request medical assistance or complain of any injuries while on the scene. *Id*. ¶ 16.

At MPD's Second District station, MPD Sergeant John Hedgecock explained to Plaintiff that, because of the Pretrial Services Agency for the District of Columbia's determination that, according to their records, Plaintiff was on probation for assault in another jurisdiction, Plaintiff had to remain in custody until an arraignment hearing the next morning. *Id*. ¶ 17.  After Plaintiff requested medical attention, Plaintiff was then transported by Officer Alicia Smith to Sibley

Hospital where she informed the medical staff, she was experiencing shortness of breath, chest pains, and a headache. *Id*. ¶ 18. The next day, on June 14, 2019, Plaintiff was released from police custody. *Id*. ¶ 19.

Plaintiff originally brought claims under 42 U.S.C. § 1983 for violations of the Fourth, Amendment (Count VI and Count VII) and common law claims for false arrest (Count I), false imprisonment (Count II), assault (Count III), battery (Count IV), and negligence (Count X). *See* Am. Compl. The Court dismissed Count VI and Count VII of the Amended Complaint against the District. *See* July 21, 2021 Order, ECF No. 29. Defendants move for summary judgment now that discovery is closed.

## STANDARD OF REVIEW

Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A moving party is 'entitled to judgment as a matter of law' against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S.

372, 380 (2007).  Where a plaintiff's recitation of facts contradicts accurate video footage of an incident, courts should view "the facts in the light depicted by the videotape."  *Id.* at 380–81.

## ARGUMENT

I.    **Officers Sharma and Griffin Are Entitled to Summary Judgment on Plaintiff's Fourth Amendment Claims.**

The Court should grant summary judgment in favor of Officer Sharma and Officer Griffin for Plaintiff's false arrest and excessive force claims under § 1983 (Count VI and Count VII).  The undisputed evidence shows that Officer Griffin did not arrest or order the arrest of Plaintiff and that Officer Sharma had probable cause to arrest Plaintiff.  Similarly, Plaintiff's excessive force claim fails because the undisputed video evidence shows that no officer used excessive force to effectuate Plaintiff's arrest or to search Plaintiff incident to her arrest.  Alternatively, Officer Sharma and Officer Griffin are entitled to qualified immunity.

A.    **Plaintiff's § 1983 False Arrest Claim Fails.**

Officer Sharma and Officer Griffin are entitled to summary judgment on Plaintiff's claim of false arrest under the Fourth Amendment because there was probable cause to arrest her for driving with no permit. DSUMF ¶¶ 3–5

The "focal point" of a false arrest claim is "whether the *arresting officer* was justified in ordering the arrest of the plaintiff . . .."  *Scott v. District of Columbia,* 101 F.3d 748, 754 (D.C. Cir. 1996) (emphasis added).  Probable cause is required for an arrest.  *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018).  Probable cause exists when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense."  *United States v. Dawkins,* 17 F.3d 399, 403 (D.C. Cir. 1994) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Because probable cause "deals with probabilities and depends on the totality of the

circumstances," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, at 243–244, n. 13.  Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

To start, the undisputed record shows that Plaintiff was arrested before Officer Griffin arrived on the scene and, therefore, Officer Griffin did not order Plaintiff's arrest, did not handcuff Plaintiff, and did not arrest Plaintiff.  DSUMF ¶ 10.  As a result, Plaintiff's Fourth Amendment claim against Officer Griffin cannot stand.  *See Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 23 (D.D.C. 2011) (granting summary judgment on plaintiff's Fourth Amendment excessive force claims against three officers where plaintiff "has not alleged any facts to suggest that [the three officers] violated Dormu's rights, as Dormu has not provided any evidence to suggest that they were involved in the application of the handcuffs . . . ."); *see also Smith v. District of Columbia,* 399 A.2d 213, 218 (D.C. 1979) ("Liability is incurred for the procuring of a false arrest and imprisonment if by acts or words, one directs, requests, invites or encourages the unlawful detention of another.").

Next, Officer Sharma is entitled to summary judgment on Plaintiff's Fourth Amendment false arrest claim because he had probable cause to arrest Plaintiff for driving with a suspended license.  *See* DSUMF ¶¶ 3–6; *see also United States v. Southerland*, 486 F.3d 1355, 1360 (D.C. Cir. 2007); *Smith v. United States*, 121 F. Supp. 3d 112, 122 (D.D.C. 2015) (dismissing constitutional false arrest claim where probable cause existed).  Under District law, it is unlawful to operate a motor vehicle without a valid driver's license.  *See* D.C. Official Code § 50–1401(d). After Officer Sharma and Officer Rimel pulled Plaintiff over for making an improper U-turn,

Officer Rimel ran Plaintiff's Connecticut driver's license in WALES/NCIC, which indicated that Plaintiff's license had been suspended.  DSMF ¶¶ 2–5.  Officer Sharma then instructed Officer Rimel to run Plaintiff's driver's license a second time in the system and it again indicated that Plaintiff's license was suspended.  *Id.* ¶ 6.  Officer Rimel then radioed the Second District dispatcher and asked the dispatcher to check the status of Plaintiff's driver's license; the dispatcher likewise reported that Plaintiff's license had been suspended.  *Id.*  After receiving three reports that indicated Plaintiff's out-of-state driver's license was suspended, Officer Sharma arrested Plaintiff for driving with "no permit."  *Id.* ¶ 7, 15.  Accordingly, the undisputed record, viewed through the eyes of a reasonable officer at the scene, shows that Officer Sharma had probable cause to arrest Plaintiff for driving with a no permit because WALES indicated Plaintiff's was suspended and it was objectively reasonable to rely on that information.  *Id.* ¶¶ 2–5.

Indeed, in a case that is strikingly similar to this one, the D.C. Circuit held that, even if information in the WALES system is ultimately incorrect as to the status of a driver's license, it is objectively reasonable for an officer to rely on information obtained from WALES showing that an individual's driver's license is suspended and such information supplies probable cause for an arrest.  *See Southerland*, 486 F.3d at 1360 (D.C. Cir. 2007) ("regardless of whether [the] license was in fact suspended, it was objectively reasonable for the officers to rely on the information received from WALES and to believe that [the] license had been suspended . . . Accordingly, probable cause existed for the arrest . . . .").  Accordingly, Officer Sharma had

probable cause to arrest Plaintiff and is entitled to summary judgment on Plaintiff's Fourth

Amendment false arrest claim.[1]

> **B.**    **Plaintiff's § 1983 Excessive Force Claim Fails.**

Officers Sharma and Griffin are also entitled to summary judgment on Plaintiff's Fourth

Amendment excessive force claim.

To establish a Fourth Amendment violation for excessive use of force by a police officer,

Plaintiff must demonstrate that first, she was seized, and second, that the use of force applied in

the seizure was unreasonable.  *See, e.g.*, *Robinson v. District of Columbia*, 736 F. Supp. 2d 254,

259 (D.D.C. 2010).  Excessive force claims are examined under the Fourth Amendment's

reasonableness standard, which asks "whether the officers' actions are 'objectively reasonable'

in light of the facts and circumstances confronting them, without regard to their underlying intent

or motivation." *Scott*, 101 F.3d at 758. (*quoting Graham v. Connor*, 490 U.S. 386, 397 (1989)).

An officer will be found to have used excessive force if the force used was so excessive that no

reasonable officer could have believed in the lawfulness of his actions.  *See Rogala v. District of*

*Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1998).

Plaintiff bases her Fourth Amendment excessive force claims on her allegations that

Officer Sharma and Officer Griffin "grabbed" her, searched her without consent, and subjected

her to excessive force during her arrest.  *See* Am. Compl. ¶ 7.  But, contrary to Plaintiff's

---

[1]    What is more, Officers Sharma and Griffin were not involved in Plaintiff's overnight detention, so they may not be held liable for any purported delay in Plaintiff's release.  But, in any event, because driving without a permit is an arrestable offense in the District of Columbia, with a maximum jail time of 90 days, see D.C. Official Code § 50–1401(d), Plaintiff's subsequent overnight detention is not a violation of the Fourth Amendment.  *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."); *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (stating that 48 hours in detention is generally constitutional).

allegations, Officer Sharma and Officer Griffin's body worn camera footage shows that the officers did not use any excessive force to arrest or search Plaintiff.  And when there are conflicting accounts but video evidence clearly portrays the events at issue, the Court must view "the facts in light depicted by video."  *Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting *Scott*, 550 U.S. at 378, 381).

   With respect to Plaintiff's arrest, Officer Sharma used no force when he arrested Plaintiff beyond routine handcuffing, which does not amount to excessive force.  *See* DSMF ¶ 7.; *see also Jackson v. District of Columbia*, 327 F. Supp. 3d 52, 65 (D.D.C. 2018) ("Smith's only use of force in Jackson's account was to handcuff him . . . which was not excessive"); *Garay v. Liriano*, 943 F. Supp. 2d 1, 21 (D.D.C. 2013) ("Handcuffing a suspect without more does not constitute excessive force."); *Barham v. Ramsey*, 338 F. Supp. 2d 48, 67 (D.D.C. 2004) (finding no constitutional violation where there was no evidence that the "manner in which plaintiff was handcuffed at the time of the arrest was unique or abnormally oppressive.").  After Officer Sharma gathered that Plaintiff's license was reportedly suspended, he asked her to step out of her vehicle, informed her that she would be placed under arrested, placed Plaintiff's arms behind her back, and handcuffed her.  *See* DSMF ¶¶ 7- 8.  And Plaintiff did not complain of any injuries to her wrists at the scene or later at the hospital when she was experiencing shortness of breath and chest pain.  *See* DSMF ¶¶ 16, 18.  What is more, courts in this jurisdiction have found incidents of handcuffing that were far more physically aggressive than this incident to constitute objectively reasonable force.  *See e.g., Robinson v. District of Columbia*, CIV.A. 03-1455 (RCL), 2006 WL 2714913, at *4 (D.D.C. Sept. 22, 2006) (finding officer who "pushed plaintiff and shoved him onto the hood of his car, and held [him] down while putting the handcuffs on [his] wrists ... tightly enough to cause swelling and abrasions, but [causing] no ongoing or permanent

9

injury" used objectively reasonable force).  Accordingly, Officer Sharma is entitled to summary

judgment on Plaintiff's Fourth Amendment excessive force claim.

The same is true for Officer Griffin.  After Plaintiff was placed under arrest, Officer

Griffin arrived on the scene and searched Plaintiff by removing Plaintiff's hat, and, with a gloved

hand, patting the outside of Plaintiff's clothes.  DSMF ¶ 10.  The BWC footage confirms that

Officer Griffin did not use unreasonable force in performing the search.  *Id.*; *see also, e.g.*,

*United States v. Robinson*, 414 U.S. 218, 226 (1973) (finding that the officer's search of plaintiff

incident to his arrest for driving without a permit was reasonable); *Mwimanzi v. Wilson*, 590 F.

Supp. 3d 231, 258 (D.D.C. 2022) (finding that an officer's general pat down of a suspect does

not give rise to Fourth Amendment liability).  Indeed, there is no evidence that Plaintiff suffered

any pain, let alone extreme pain, due to Officer Griffin's search; Plaintiff did not complain on the

scene or later in the evening at the hospital about any injuries caused by Officer Griffin's benign

search.  DSMF ¶¶ 16, 18; *see also Dormu*, 795 F. Supp. at 22. (finding that the severity of an

injury is relevant to the constitutionality of an officer's actions).  Thus, no reasonable juror could

find for Plaintiff on her excessive force claim against Officer Griffin and the Court should grant

summary judgment in her favor.

C.    **Officer Sharma and Officer Griffin are Shielded from Liability Under Qualified Immunity.**

Qualified immunity "gives government officials breathing room to make reasonable but

mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

The Supreme Court "'repeatedly ha[s] stressed the importance of resolving immunity questions

at the earliest possible stage in litigation.'"  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)

(quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).  Under the doctrine of

qualified immunity, government officials sued in their personal capacities cannot be held liable

under § 1983 unless (1) they violated a federal statutory or constitutional right and (2) the

unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566

U.S. 658, 664 (2012); *see also al-Kidd*, 563 U.S. at 735.[2]  In this case, it was not clearly

established at the time of Plaintiff's arrest and search that the Defendant officers' actions

violated Plaintiff's Fourth Amendment rights.

      "Clearly established" means that, at the time of the employee's conduct, the law was

"sufficiently clear that every reasonable official would understand that what he is doing is

unlawful." *District of Columbia v. Wesby*, 583 U.S. at 63 (citations and quotations omitted).

This "demanding standard" contemplates that "existing law must have placed the

constitutionality of the [employee's] conduct beyond debate" and protects "all but the plainly

incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted).  To

be clearly established, "a legal principle must have a sufficiently clear foundation in then-

existing precedent," and must be "settled law." *Id.*  The rule must be "dictated," and not just

suggested, by "'controlling authority' or a robust 'consensus of cases of persuasive authority.'"

*Id.* (quoting *al-Kidd*, 563 U.S. at 741–42).

      The "clearly established standard also requires that the legal principle clearly prohibit the

[employee's] conduct in the particular circumstances before him." *Id.* (cleaned up).  This

requires a "high degree of specificity," *i.e.*, the rule's contours must be so well defined that it is

"clear to a reasonable [employee] that his conduct was unlawful in the situation he confronted."

*Id.*  "To delineate the body of governing law that a reasonable officer should have been aware of,

---

[2]      The sequence of the two steps is discretionary, as the Supreme Court has made clear that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[courts] look[] to cases from the Supreme Court and the D.C. Circuit, as well as to cases from other courts exhibiting a consensus view." *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 393 (D.D.C. 2016); *but see Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8, (2021) (noting that neither plaintiff nor Circuit Court of Appeals had identified any Supreme Court case addressing facts like the ones at issue and suggesting that only Supreme Court precedent can clearly establish law for purposes of § 1983 qualified immunity analysis).

A defendant bears the burden of raising the defense of qualified immunity in response to a claim brought under § 1983, *see Crawford–El v. Britton*, 523 U.S. 574, 587, (1998), and once the defense is asserted, "the burden of proof then falls to the plaintiff to show that the official is not entitled to qualified immunity," *Winder v. Erste*, 905 F. Supp. 2d 19, 28 (D.D.C. 2012) (citation omitted); *see also Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015). Thus, "to show a violation of clearly established law, [a plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful." *Rivas-Villegas*, 142 S. Ct. at 8; *see also City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 12 (2021) (reversing denial of qualified immunity where neither "the panel majority nor the respondent has identified a single precedent finding a Fourth Amendment violation under similar circumstances").

The Supreme Court has emphasized the importance of factual context in deciding qualified immunity in Fourth Amendment excessive force cases:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent *squarely governs the specific facts at issue*. Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an

12

> officer notice that a specific use of force is unlawful. . . . An officer
> cannot be said to have violated a clearly established right unless the
> right's contours were sufficiently definite that any reasonable
> official in the defendant's shoes would have understood that he was
> violating it.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194,

198 (2004) (per curiam)) (emphasis added); *see also Hedgpeth v. Rahim,* 893 F.3d 802, 809

(D.C. Cir. 2018) (holding that an officer is entitled to qualified immunity if the use of force was

objectively reasonable and existing law does not clearly establish the use of force would be

unconstitutional).  And Police officers are entitled to qualified immunity for constitutional claims

relating to an arrest if "reasonable officers in their positions '*could* have believed that probable

cause existed to arrest.'"  *Reiver v. District of Columbia*, 925 F. Supp. 2d 1, 7 (D.D.C. 2013)

(quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (emphasis added).  Thus, an officer who

"reasonably, but mistakenly, concludes that probable cause is present" is not constitutionally

liable for making the arrest.  *Hunter*, 502 U.S. at 227.

Here, qualified immunity shields Officer Sharma and Officer Griffin from liability under

the Fourth Amendment.  As discussed in Sections I.A and I.B above, the undisputed facts show

that Officer Sharma had probable cause to arrest Plaintiff for driving with no permit when he

reasonably relied on the information received from WALES that Plaintiff's license was

suspended and that he did not use excessive force during the arrest.  *See* DSMF ¶¶ 3–6.

Similarly, the undisputed evidence shows Officer Griffin's search of Plaintiff after her arrest was

reasonable.  *See* DSMF ¶¶ 10, 15-16.  But, even if the Court disagrees, Officer Sharma and

Officer Griffin are still entitled to qualified immunity because there was no "settled law" that

established, under the facts and circumstances they confronted at the time, that every reasonable

officer would have known their conduct was unlawful.  Here, it was not clearly established that

13

Plaintiff had a right to free from an arrest that was based on a confirmed report from WALES that Plaintiff's out-of-state driver's license was suspended.  In fact, settled law at the time provided that Officer Sharma's reliance on the information received from WALES that Plaintiff's license was suspended was objectively reasonable and supplied probable cause to arrest her.  *See Southerland*, 486 F.3d at 1360.  Nor was it clearly established that routine handcuffing and a pat down of an arrestee's outer clothing was unlawful. There is no case law from either the Supreme Court or the D.C. Circuit squarely governing the specific facts at issue that would have put Officer Sharma or Griffin that their actions violated the Fourth Amendment. To the contrary, existing precedent provided that routine handcuffing and unintrusive searches incident to arrest cause no constitutional injury.  *See Robinson*, 414 U.S. at 226; *Garay*, 943 F. Supp. 2d at 21.  Accordingly, qualified immunity protects Officer Sharma and Officer Griffin from liability and the Court should grant summary judgment in favor of the Defendant officers.

II.     **Defendants Are Entitled to Summary Judgment on Plaintiff's Common Law Claims**

     A.     **The Court Should Exercise Supplemental Jurisdiction Over Plaintiff's Common Law Claims.**

As an initial matter, the Court should exercise supplemental jurisdiction over Plaintiff's common law claims.  Because the basis for federal jurisdiction would fall away after dismissal of the § 1983 claims against Officers Sharma and Griffin, the Court will have to decide whether to retain supplemental jurisdiction over Plaintiff's common law claims.  *See* 28 U.S.C. § 1367.  In deciding whether to exercise supplemental jurisdiction, the "court must first determine whether the state and federal claims derive from a common nucleus of operative fact."  *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 78 (D.D.C. 2011) (citing *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996)).  If so, "the court then must decide whether to exercise its discretion to assert jurisdiction over the state claim."  *Id.* at 78–79.

In making this determination, the court must weigh factors of judicial economy, convenience, fairness, and comity. *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995).

While, ordinarily, if a court dismisses the claims from which its jurisdiction arises the court should dismiss the common law claims under 28 U.S.C. § 1367, the Court here should exercise supplemental jurisdiction over Plaintiff's common law claims. First, her federal and state law claims derive from a common nucleus of operative facts. And, as to the factors of judicial economy, convenience, fairness, and comity, the parties have litigated this matter for over three years through discovery in this Court and dismissing the common law claims would prolong the case as the new court would have to familiarize itself with the factual and procedural background of the case. Moreover, the standards for resolving Plaintiff's federal and state law claims are analogous and the case does not raise novel questions of state law. *See Bushrod v. District of Columbia*, 521 F. Supp. 3d 1, 29 (D.D.C. 2021) ("To evaluate whether qualified privilege applies, District of Columbia courts use the same objective reasonableness standard applicable to qualified immunity under § 1983" (citations and quotations omitted)); *Campbell v. District of Columbia*, 245 F. Supp. 3d 78, 90 (D.D.C. 2017) (holding that, where use of force was reasonable, qualified privilege bars common law assault and privilege claims). Therefore, the Court should exercise supplemental jurisdiction over Plaintiff's common law claims.

**B.      Plaintiff's False Arrest and False Imprisonment Claims Fail.**

Defendants are entitled to summary judgment on Plaintiff's common law claims for false arrest (Count I) and false imprisonment (Count II).[3] Constitutional and common law claims of

---

[3]      False arrest is essentially indistinguishable from the common law tort of false or unlawful imprisonment. *See Dent v. May Dep't Stores Co*., 459 A.2d 1042, 1044 n.2 (D.C. 1982); *See also Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010); *Great Atlantic & Pacific Tea*

false arrest are generally analyzed as though they comprise a single cause of action. *See, e.g.*, *Scott*, 101 F.3d at 753–54; *District of Columbia v. Minor*, 740 A.2d 523, 529 (D.C. 1999) (noting that if the court finds a viable constitution claim of false arrest, then a viable common law claim naturally flows). The elements of both claims are "substantially identical." *Scott*, 101 F.3d at 753. Defendants "will have a complete defense to a false arrest claim" at common law if the arresting officer "has so-called constitutional probable cause to arrest, determined by reference to the objective standard used to determine probable cause in a criminal proceeding." *Scales v. District of Columbia*, 973 A.2d 722, 729 (D.C. 2009) (quotation omitted). Plaintiff's false arrest claim against the District rests on a *respondeat superior* theory of liability and thus if the officers are not liable, the District cannot be held liable on Plaintiff's common law claim. *See Wilkins v. District of Columbia*, No. 17-CV-884, 2020 WL 5816591 at *16 n.7 (D.D.C. Sept. 30, 2020) (granting summary judgment for the District on plaintiff's false arrest claim where defendant officers had probable cause to arrest). Here, as shown in Section I.A, *supra*, Officer Sharma had probable cause to arrest Plaintiff for driving without a permit. DSUMF ¶¶ 3–6. And Officer Griffin was not present when Plaintiff was arrested. *Id.* ¶ 10. It necessarily follows that Plaintiff's common law false arrest and imprisonment claims against the District based on Officer Sharma and Griffin's conduct fail as a matter of law.

---

*Co. v. Paul*, 261 A.2d 731, 738 (D.C. 1970) (noting that the two are "torts that apparently differ only in terminology"). The basis of any complaint for either false arrest or false imprisonment is an alleged unlawful detention. *See Clarke v. District of Columbia*, 311 A.2d 508 (D.C. 1973). Where a plaintiff does not distinguish the two claims, as is the case here, courts have dismissed false imprisonment claims. *See Williams v. District of Columbia*, 174 F. Supp. 3d 410, 414 (D.D.C. 2016) (dismissing false imprisonment claim as duplicative); *see also Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 41 (D.D.C. 2015) (treating false arrest and false imprisonment as single claim for false arrest). On this basis, the Court should grant summary judgment to Defendants on Plaintiff's false imprisonment claim.

What is more, Officers Sharma and Griffin were not involved in Plaintiff's overnight detention, so the District likewise may not be held liable for any purported delay in Plaintiff's release under a *respondeat superior* theory based on their conduct.  And, in any event, Plaintiff's overnight detention was also supported by probable cause that she committed a crime, driving with a suspended license.  *Id.* ¶ 15.  Driving without a permit is an arrestable offense in the District of Columbia, with a maximum jail time of 90 days, *see* D.C. Official Code § 50–1401(d).  Plaintiff has offered no evidence that either Officer Griffin or Sharma, or anyone at the Second District station or MPD "ascertained *beyond a reasonable doubt* that the suspicion upon which the privilege to arrest is based [was] unfounded," and that they were therefore "no longer privileged to keep [Plaintiff] in custody" and had a duty to release her.  RESTATEMENT (SECOND) OF TORTS § 134 (1965) cmt. f.; *see also Vasquez v. District of Columbia*, No. 17-CV-02194, 2023 WL 2682290, at *5–6 (D.D.C. Mar. 29, 2023) (relying on Restatement of Torts and granting District's motion for judgment as a matter of law on plaintiff's false arrest claim premised on duty to release, and noting "the high degree of certainty required before a duty to release arises").  Therefore, the Court should grant summary judgment to Defendants on Plaintiff's common law false arrest and false imprisonment claims.

**C.**    **Defendants Are Entitled to Summary Judgment on Plaintiff's Assault and Battery Claims.**

Plaintiff also brings assault and battery claims against Defendants based on Plaintiff's arrest and subsequent search and Defendants are likewise entitled to summary judgment on these claims.

Under District law, an assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the victim." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C.1993).  To be liable for assault, a defendant must have intended "to cause in the

17

plaintiff an apprehension of a battery." *Sabir v. District of Columbia*, 755 A.2d 449, 452

(D.C.2000). Battery is "an intentional act that causes harmful or offensive bodily contact.'"

*Etheredge*, 635 A.2d at 916. (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 955

(D.C.1980)). A law enforcement officer is privileged to commit an assault or battery if he is

simply using reasonable force in the making of an arrest. If the Court finds the arrest was lawful,

"plaintiff must show that the force used was excessive or that the threatened use of force was

clearly excessive." *Jackson*, 412 A.2d at 956. The District may be held "vicariously liable for

the intentional and negligent acts of its officers acting within the scope of their employment."

*Evans–Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C.2007). The issue of liability in

such cases "turns on the defense of privilege." *Id.* "Under District of Columbia law, a police

officer is privileged to use force so long as the 'means employed are not in excess of those which

he reasonably believes are necessary." *Dormu*, 795 F. Supp. 2d at 27 (citing *Etheredge*, 635

A.2d at 916).

     Plaintiff's assault claim fails as a matter of law. The undisputed evidence shows that

neither Officer Sharma nor Officer Griffin threatened to use force against Plaintiff before her

arrest or search. DSUMF ¶¶ 7, 9, 14. The BWC footage shows Officer Sharma simply notified

Plaintiff she would be placed under arrest, which was supported by probable cause. *Id.* And

because the arrest was lawful, simply notifying the Plaintiff that she is under arrest does not rise

to the "clearly excessive" standard required to establish liability for an assault claim. *See, e.g.*,

*Beran v. United States*, 88-0603, 1992 WL 182261, at *8 (D.D.C. July 13, 1992) (finding no

threat of excessive force where officer simply notified plaintiff he was under arrest).

     With respect to Plaintiff's battery claim, any force used by Officer Sharma and Officer

Griffin to arrest and search Plaintiff was nonexistent or *de minimis*, and, therefore, Plaintiff's

battery claim lacks merit.  The undisputed record shows, because Plaintiff was compliant, neither Officer Sharma nor Officer Griffin used more than *de minimis* force to execute Plaintiff's arrest and search.  DSMF ¶¶ 7,9-10.  A federal district court may dismiss common law claims of assault and battery where it finds that an officer did not use excessive force for purposes of the plaintiff's § 1983 claims and the officers subjectively believed that their conduct was lawful.  *See Rogala*, 161 F.3d at 57 (dismissing an assault and battery claim where the court found no excessive force under its § 1983 analysis); *Jenkins v. District of Columbia*, 223 A.3d 884, 903 (D.C. 2020) (granting summary judgment to the District on qualified privilege grounds where plaintiff offered no affirmative evidence that officers acted in bad faith).  Such is the case here. And because Plaintiff's assault and battery claims against the District rests on a *respondeat superior* theory of liability and Officer Sharma and Officer Griffin are not liable, the District cannot be held liable for Plaintiff's common law claims.  *See Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 98 (D.D.C. 2015).  Therefore, the Court should grant summary judgment to Defendants on Counts I and II of the Complaint.

### D.    Defendants Are Entitled to Summary Judgment on Plaintiff's Common Law Negligence Claim.

Finally, Defendants are entitled to summary judgment on Plaintiff's negligence claim.  To start, the Court should dismiss Plaintiff's claim against Defendants because her claims of negligent arrest and false arrest are indistinguishable.  In *Stewart-Veal v. District of Columbia*, the court affirmed the trial court's dismissal of plaintiff's negligence claim because "it [was] not separate and distinct from the false arrest claim; rather, it [was] intertwined with and dependent on that claim."  896 A.2d 232, 235 (D.C. 2006).  So too here.  According to Plaintiff, Defendants breached their duty of care by arresting her without legal justification.  *See* Am. Compl. ¶¶31– 32.  Thus, her negligence claim merely parrots her false arrest claim and does not offer

"independent grounds for finding negligence." *Katz v. District of Columbia*, 285 A.3d 1289,

1317 (D.C. 2022) (internal citation omitted).

To the extent the Court does find Plaintiff's negligence claim is separate and distinct

from her common law false arrest claim, Defendants are still entitled to summary judgment.  The

District cannot be held liable on a *respondeat superior* theory based on Officer Griffin's conduct

because the undisputed record shows that Griffin did not arrest Plaintiff or order Plaintiff's arrest

on the scene.  *See* DSMF ¶ 9.  To the contrary, the record establishes that Officer Griffin arrived

on the scene *after* Plaintiff was arrested. *Id.*

Nor can Plaintiff maintain her negligence claim against the District based on Officer

Sharma's purported negligence.  To do so, Plaintiff must show an "applicable standard of care,"

a "deviation from that standard by the defendant, and a causal relationship between that

deviation and the plaintiff's injury." *Scales v. District of Columbia,* 973 A.2d 722, 730 (D.C.

2009).  Failure to establish a standard of care is fatal to a negligence claim.  *See District of*

*Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990).  In other words, a failure to offer

evidence sufficient to determine the applicable standard of care amounts to a failure of proof of

negligence.  *See District of Columbia v. White*, 442 A.2d 159, 165 (D.C. 1982) ("Absent

testimony [about the applicable standard of care], the jury [i]s forced to engage in speculation,

which, of course, is prohibited.").  Expert testimony is required as to the standard care, "if the

subject in question is so distinctly related to some science, profession or occupation as to be

beyond the ken of the average layperson." *Briggs v. Wash. Metro. Transit Area Auth.*, 481 F.3d

839, 845 (D.C. Cir. 2007); *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C.

2000).  Expert testimony is not required "if the subject matter is within the realm of common

knowledge and everyday experience." *Briggs*, 481 F.3d at 845, but expert testimony is often

required to resolve negligence claims involving police practices. *See, e.g., Smith v. District of Columbia, et al.*, 882 A.2d 778, 792–93 (D.C. 2005) (requiring expert testimony on claims of failure to train, supervise, and discipline police officers); *see also Moore v. District of Columbia*, 79 F. Supp. 3d 121, 144–45 (D.D.C. 2015) (collecting cases for the proposition that "expert testimony has been required for claims of negligent training of police personnel"). Here, Plaintiff alleges that Officer Sharma was negligent in failing to ensure that there was legal justification for her arrest. *See* Am. Compl. ¶¶ 31–32. But whether an arresting officer's reliance on WALES/NCIC in effectuating an individual's arrest for driving without a permit adheres to the applicable national standard of care is not a matter within the realm of common knowledge and therefore requires expert testimony. Furthermore, to succeed on her negligence claim, Plaintiff was required to present evidence as to what the District should have done to avoid the harm. *See Arnold & Porter*, 756 A.2d at 433–34. (D.C. 2000). In other words, Plaintiff must demonstrate what steps MPD should have undertaken to ameliorate any purported problems with its officers' reliance on WALES/NCIC to avoid the harm to Plaintiff. Lacking an expert, Plaintiff cannot meet this requirement. Thus, because Plaintiff has not named an expert witness, she cannot prove the standard of care governing her negligence claims, and the Court should grant summary judgment in favor of Defendants.

In any event, even if the Court finds expert testimony unnecessary, Plaintiff still cannot establish that Officer Sharma breached any duty of care, as the D.C. Circuit has already held that comparable conduct is objectively reasonable and that MPD officers may justifiably rely on WALES before effecting an arrest for driving without a permit. *See Southerland*, 486 F.3d at 1360. Thus, because Officer Sharma had probable cause to arrest Plaintiff when he reasonably relied on the information received from WALES that Plaintiff's license was suspended, DSUMF

¶¶ 3–6, he could not have acted negligently and Plaintiff's arrest cannot be used to support a negligence claim against the District via a *respondeat superior* theory. Defendants are therefore entitled to judgment as a matter of law on Plaintiff's negligence claim.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment and enter judgment in favor of Defendants.

Date: November 14, 2023                                      Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Acting Chief, Civil Litigation Division Section II

*/s/ Zita Orji*
ZITA ORJI [1740117]
Assistant Attorney General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 769-6181
zita.orji1@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SCHEKERA BLAIR-SCOTT, | |
| *Plaintiff*, | |
| v. | 1:20-cv-02258 (JMC) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants*. | |

**ORDER**

Upon consideration of Defendants' Motion for Summary Judgment, any opposition and reply thereto, and the entire record, it is by the Court this _____ day of _____ 202_, hereby,

**ORDERED** that Defendants' Motion is **GRANTED**; and it is further

**ORDERED** that **JUDGMENT** is entered in Defendants' favor; and it is further

**ORDERED** that the Amended Complaint is **DISMISSED WITH PREJUDICE** against all Defendants.

**SO ORDERED**.

_____
JIA M. COBB
United States District Judge