**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SCHEKERA BLAIR-SCOTT, | |
| Plaintiff, | Case No. 20-cv-2258 (JMC) |
| v. | |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

### <u>MEMORANDUM OPINION</u>

Schekera Blair-Scott was stopped by Metropolitan Police Department officers when they saw her make an allegedly illegal u-turn. The officers ran Blair-Scott's information through a database which told them that her license had been suspended. They then put her in handcuffs and arrested her. Another officer came to the scene and searched Blair-Scott before she was taken to the police station. Blair-Scott was held overnight and released the next day. As it turns out, her license was not suspended. Blair-Scott brought this lawsuit alleging that she was arrested without probable cause and that, during her arrest and the search after that arrest, the officers used excessive force. On the undisputed record, those claims fail, as do Blair-Scott's closely related state law claims. The Court therefore **GRANTS** the defendant's motion for summary judgment. [1]

### I.    BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Schekera Blair-Scott was driving home from work when two D.C. Metropolitan Police Department officers pulled her over.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

*See* ECF 54 at 3; ECF 55 at 3; ECF 54-1 at 2. Those officers—Vijay Sharma and Joseph Rimel—saw Blair-Scott make an illegal u-turn. *See* ECF 54 at 3; ECF 55 at 3 (Blair-Scott purporting to "partially dispute" that she made the turn but failing to cite any contrary record evidence). After Blair-Scott gave the officers her license, they went back to their vehicle and used a database called the Washington Area Law Enforcement System (WALES) to check Blair-Scott's information. *See* ECF 54 at 3–4; ECF 55 at 3–4. WALES "showed that" Blair-Scott's "drivers license was suspended." ECF 54 at 4; ECF 55 at 4. The officers ran their WALES check again to confirm that result, and then called the dispatcher at their station to triple-check. *See* ECF 54 at 4–5; ECF 55 at 4–5. The dispatcher told the officers that Blair-Scott's license was indeed "reported to be suspended." ECF 54 at 5; ECF 55 at 5.

Based on this information, the officers went back to Blair-Scott, asked her to get out of her car, put her in handcuffs, and told her that their records showed that her license had been suspended. *See* ECF 54 at 5; ECF 55 at 5. After Blair-Scott was arrested, another Metropolitan Police Department officer—Lauren Griffin—arrived on the scene. *See* ECF 54 at 5; ECF 55 at 5 (not disputing that Griffin arrived after Blair-Scott was arrested). Griffin then searched Blair-Scott by patting her down and removing her hat. *See* ECF 54 at 5; ECF 55 at 5; *see also* Def. Ex. 9, Griffin Body Worn Camera at 2:00–3:30 [Griffin BWC].

After Griffin finished searching Blair-Scott, she put Blair-Scott in a police vehicle to take her to a police station. *See* ECF 54 at 5; ECF 55 at 5 (not disputing this fact). But Blair-Scott told the officers that she was claustrophobic and would have a panic attack in that vehicle. *See* ECF 54 at 6; ECF 55 at 6. So the officers moved Blair-Scott into a police SUV and then took her to the station for processing. *See* ECF 54 at 6; ECF 55 at 6.

Blair-Scott was charged with "driving with no permit." ECF 54 at 6; ECF 55 at 6; *see also* ECF 54-2 at 1. And when she got to the police station, an officer told her that the pretrial services agency had determined that she was on probation for assault in another jurisdiction, so would have to remain in custody until she could be arraigned the next morning. *See* ECF 54 at 6; ECF 55 at 7. While she was at the station, though, Blair-Scott told officers that she was having shortness of breath, chest pains, and a headache. *See* ECF 54 at 6; ECF 55 at 7. Officers then took her to a hospital for treatment. *See* ECF 54 at 6; ECF 55 at 7.

The next morning, Blair-Scott went to court. *See* ECF 54-1 at 6. She was released from custody at that hearing. *See id.*; ECF 54 at 7; ECF 55 at 7. Although there is nothing in the record about what exactly happened at the hearing, Blair-Scott's counsel asserts in her opposition that the "arrest was 'no papered' because her license was not, in fact, suspended." ECF 55 at 9. And Blair-Scott did file a record showing that her license was valid at the time of her arrest. *See* ECF 55-3 at 1. She also filed an order from the Superior Court of the District of Columbia sealing the records related to this arrest. *See* ECF 55-5. She sought that relief on the basis of "actual innocence," the District did not oppose it, and the court found that Blair-Scott "did not commit the offense for which she was arrested." ECF 55-5 at 1.

In addition to seeking to seal the records related to her arrest, Blair-Scott filed this lawsuit to recover damages for what she believed was the officers' and District's unlawful conduct during the arrest. Blair-Scott sued two of the individual officers, Sharma and Griffin, as well as the District. *See* ECF 1-2 at 2. Blair-Scott filed the case in the Superior Court but the District removed and brought it here. *See* ECF 1. Once here, Blair-Scott filed an amended complaint, ECF 16, which the District—but not the individual officers—moved to dismiss, *see* ECF 15. The Court partially granted that motion, holding that the District could not be held liable under *Monell v. Department*

*of Social Services*, 436 U.S. 658 (1978), for Blair-Scott's constitutional claims. *See* ECF 30 at 8. But the Court declined the District's invitation to dismiss the remaining state law claims against it, instead opting to exercise supplemental jurisdiction over those claims because they "arise out of the same underlying allegations as the" federal claims Blair-Scott is pressing against the individual officers. *Id.* at 9–10.

Left in the case after that ruling are Blair-Scott's Fourth Amendment claims against the individual officers—for unlawful arrest and for excessive force both during the arrest and the subsequent search—and the state law claims against the officers and the District—for false arrest, false imprisonment, assault, battery, and negligence. *See* ECF 16 ¶¶ 14–42 (all counts except Fourth Amendment claims against District). The District and individual officers have now filed a motion seeking summary judgment on all of those remaining claims. *See* ECF 54.

## II.      LEGAL STANDARD

The Court will grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

## III.      ANALYSIS

The Court considers first Blair-Scott's Fourth Amendment claims against the individual officers. Because the officers had probable cause to arrest Blair-Scott for driving without a license, and because no reasonable jury could conclude that Sharma used excessive force in arresting Blair-Scott or Griffin used excessive force in searching her, the constitutional claims fail. Those conclusions largely dictate the result for the state law claims, which map onto the constitutional claims in this case. The Court therefore enters judgment for the defendants on all claims.

4

### A. Officer Sharma had probable cause to arrest Blair-Scott.

"A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). That rule applies here and defeats Blair-Scott's claim that her arrest was unconstitutional.[2]

Blair-Scott seemingly brings the arrest related claim against Griffin, as well as Sharma. *See* ECF 16 ¶ 35. But Griffin did not arrive on the scene until after Blair-Scott was arrested and there is no evidence that she had anything to do with Blair-Scott's arrest. *See* Griffin BWC at 2:00–2:05 (Griffin arriving when Blair-Scott is in cuffs); ECF 55 at 5 (Blair-Scott not disputing that Griffin arrived after Blair-Scott was arrested). Griffin argued that she was entitled to judgment on this claim on this basis, and Blair-Scott did not respond to that argument, let alone offer any explanation for why Griffin could be held liable for the arrest. *See* ECF 54 at 12–13. The Court therefore grants judgment to Griffin on this claim and only considers Sharma's actions in relation to the arrest.

It is undisputed that, before Sharma arrested Blair-Scott, a WALES search told him that her license was suspended. *See* ECF 54 at 4; ECF 55 at 4. In fact, Sharma's partner ran the WALES search twice and confirmed the result with a dispatcher at the police station. *See* ECF 54 at 4–5; ECF 55 at 4. "Regardless of whether [Blair-Scott's] license was in fact suspended, it was objectively reasonable for [Sharma] to rely on the information received from WALES and to believe that [Blair-Scott's] license had been suspended." *United States v. Southerland*, 486 F.3d 1355, 1360 (D.C. Cir. 2007). That is why the D.C. Circuit has squarely held that a "WALES system report[]" saying a license has been suspended establishes "probable cause" for an arrest. *Id.*; *see*

---

[2] Blair-Scott does not challenge the initial traffic stop, so the Court does not consider whether the officers complied with the requirements of the Fourth Amendment when they pulled her over on suspicion of making an illegal u-turn.

*also Hamid v. United States*, 247 F. Supp. 3d 131, 136–37 (D.D.C. 2017) (explaining that the "D.C. Circuit has addressed whether probable cause exists to arrest based on information received by an officer from the WALES system, and concluded that" it does). So the WALES result alone established probable cause to believe Blair-Scott committed the misdemeanor offense of driving without a license. *See* D.C. Code § 50-1401.01(d).

Blair-Scott has not made any attempt to distinguish that D.C. Circuit decision or explain why it does not control here. In fact, she ignored the decision altogether. *Compare* ECF 55 (no discussion of *Southerland*, 486 F.3d 1355), *with* ECF 54 at 14–15 (defendants discussing this case). This Court is not at liberty to ignore a "controlling decision" from the Circuit though and sees no meaningful difference between this case and that one. *Wehr-Darroca v. Dist. of Columbia*, No. 24-cv-3504, 2025 WL 2694790, at *3 (D.D.C. Sept. 22, 2025). The only potentially relevant fact that distinguishes the two cases is that Blair-Scott told Sharma that she did not believe her license was suspended. *See* Def. Ex. 3, Sharma Body Worn Camera, at 12:00–13:00 [Sharma BWC]. But "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Amobi v. D.C. Dep't of Corrections*, 755 F.3d 980, 99 (D.C. Cir. 2014). So even if Blair-Scott maintained her innocence, that did not dispel probable cause.

**B. There is no genuine dispute of fact on Blair-Scott's excessive force claims.**

Blair-Scott next alleges that Sharma used excessive force when handcuffing her by "twisting [her] arm in an unnatural and forceful manner," and that Griffin used excessive force while searching her. ECF 55 at 23–24. These claims fail too. Sharma's and Griffin's actions were "objectively reasonable" for the basic reason that Blair-Scott has not put forward evidence from which a jury could conclude that either officer used almost any force at all. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

6

Start with Sharma. Blair-Scott says that when he was arresting her, he "twist[ed] [her] arm in an unnatural and forceful manner." ECF 55 at 5. In support of that assertion, the only evidence Blair-Scott cites is the footage from Sharma's body worn camera and from his partner officer Rimel's body worn camera. *See id.* at 5, 23–24. No reasonable jury could conclude from those videos, however, that Sharma twisted Blair-Scott's arm. Sharma's body worn camera hardly shows his or Blair-Scott's hands, and does not show any twisting. *See* Sharma BWC at 11:40–12:38; ECF 55 at 5 (citing this portion of video). Instead, it shows Sharma and Blair-Scott calmly interacting while you hear Sharma putting the handcuffs on Blair-Scott. Rimel's body worn camera does not show Sharma twisting Blair-Scott's arm, either. *See* Def. Ex. 4, Rimel Body Worn Camera, at 11:40–12:38; ECF 55 at 5 (citing this portion of video). It does show slightly more of Sharma's hands while he is cuffing Blair-Scott, but no reasonable jury could conclude based on this video that Sharma twisted Blair-Scott's arms. Because neither video supports that conclusion, Blair-Scott has not put forward evidence from which a jury could conclude that Sharma did anything more than use the normal amount of force required to put on handcuffs while making— as explained above—a lawful arrest. "Handcuffing a suspect during a lawful arrest, without more, is not excessive force." *Jackson v. District of Columbia*, 327 F. Supp. 3d 52, 69 (D.D.C. 2018).

In reaching that conclusion, the Court notes that this is not a case where it must decide whether video evidence "blatantly contradict[s]" Blair-Scott's account of what happened. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The only evidence in the record that Blair-Scott cites is the video, so the Court merely views the video in the light most favorable to Blair-Scott and considers what conclusions a jury could draw from it. Had Blair-Scott put forward, for example, her own testimony in which she said that Sharma twisted her arm, the Court would have had to decide whether that testimony was so flatly inconsistent with the video that "no reasonable jury could

believe" it. *Id.*; *see, e.g.*, *Jalloh v. Hugee*, No. 21-cv-1480, 2025 WL 2719243, at *6 (D.D.C. Sept. 24, 2025) (concluding that video evidence did not "flatly contradict[]" plaintiff's testimony so crediting that testimony at summary judgment). But here, the video is the only evidence from which she is saying the jury could conclude Sharma used excessive force in handcuffing her, so the fact that the video does not show any such force is fatal to this claim.[3]

The claim against Griffin fails for similar reasons. Blair-Scott does not much explain what she found excessive about Griffin's search other than the fact of the search itself. Blair-Scott says that Griffin "patt[ed] on the outside, us[ed] her hands to access the inside of [Blair-Scott's] clothes, and remov[ed] [Blair-Scott's] hat." ECF 55 at 5. What Blair-Scott describes there is merely a typical, and lawful, search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 222–23 (1973) (holding search incident to arrest was objectively reasonable where officer "pat[ted suspect] down" and "reached into" and "examin[ed]" suspect's "pockets"). Blair-Scott does not even argue, then, that this search was "unusually intrusive." *Dickey v. United States*, 174 F. Supp. 3d 366, 370 (D.D.C. 2016). And, once again, the only evidence she cites is the video footage. *See* ECF 55 at 5, 24 (citing Sharma body worn camera and Griffin body worn camera). No reasonable jury watching either video could conclude that Griffin did anything other than conduct a standard search incident to arrest. *See* Griffin BWC at 2:00–5:55; Sharma BWC at 25:03–25:33; ECF 55 at 5, 24 (citing these portions of video). Blair-Scott has therefore failed to create a genuine dispute of fact about the reasonableness of the force used during the search, and this excessive force claim fails too.[4]

---

[3] Blair-Scott does cite her complaint at one point while discussing Sharma's alleged force. *See* ECF 55 at 11–12. But Blair-Scott "cannot rely on the allegations of her own complaint in response to a summary judgment motion," and instead "must substantiate them with evidence." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).

[4] The officers also argue that they are entitled to qualified immunity for each of these constitutional claims. *See* ECF 54 at 17–21. In concluding that Blair-Scott failed to create a genuine dispute as to the merits of these claims, the Court necessarily also concludes that Blair-Scott cannot get past the first prong of the qualified immunity analysis, which asks whether "the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right." *Pearson v.*

**C. The tort claims fail for the same reasons that the constitutional ones do.**

Although the basis for federal question jurisdiction has "fallen away" given the grant of summary judgment to the defendants on the constitutional claims, the Court will exercise its discretion to retain supplemental jurisdiction over the remaining state law claims. *Armbruster v. Frost*, 962 F. Supp. 2d 105, 116 (D.D.C. 2013); *see* 28 U.S.C. § 1367(a), (c)(3). It does so because those claims share a "common nucleus of operative fact," because "judicial economy, fairness, and comity" all favor the exercise of jurisdiction, and because none of the remaining claims "raise[] a novel or complex issue of state law." *Id.*

Having assured itself of its jurisdiction, the Court need not dwell for long on the state law claims. That the officers undisputably had "probable cause" to arrest Blair-Scott entitles the defendants to summary judgment on the false arrest and false imprisonment claims. *District of Columbia v. Minor*, 740 A.2d 523, 531 (D.C. 1999); *see Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010) ("[I]n actions for false arrest and false imprisonment, the central issue is whether the arresting officer was justified in ordering the arrest of the plaintiff."). Blair-Scott alludes vaguely to the idea that someone at the police station should have conducted a further investigation after she was arrested and brought in, which could perhaps have shortened her time in custody, but she completely fails to develop this argument and did not put forward any evidence about what the officers did or failed to do at the station. *See* ECF 55 at 33–36. There is therefore no basis in this case to consider whether, although the initial arrest was supported by probable cause, at some later point in time Blair-Scott's continued detention became false imprisonment. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work.").

---

*Callahan*, 555 U.S. 223, 232 (2009). The Court has discretion to decide which of the two prongs of the qualified immunity analysis "should be addressed first," and it starts and ends here with the first prong. *Id.* at 236.

9

The assault and battery claims fail because on the undisputed record neither Sharma nor Griffin exceeded their qualified privilege to use reasonable force to effectuate the arrest and search. *See Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009). As the Court has already explained on the Fourth Amendment claims, the force used by the officers was "objective[ly]" reasonable. *Id.* And—even assuming the defendants have the burden of establishing that Sharma's and Griffin's actions fell within the qualified privilege—there is no evidence from which a reasonable jury could conclude that the officers "subjectively believe[d]" that they used "more force than necessary." *Id.*; *see Jenkins v. District of Columbia*, 223 A.3d 884, 902 (D.C. 2020) (noting that D.C. Court of Appeals has "not resolved the question of burden of proof as to privilege in an assault and battery claim"). Although Blair-Scott offers the conclusory assertion that Sharma and Griffin may have "been motivated by actual malice," ECF 55 at 12 (citing only her complaint), the evidence in the record from which a jury could draw conclusions about their intent shows them acting calmly and using the minimal force necessary to conduct an arrest and search.

Finally, the negligence claim fails because it is not "separate and distinct" from the intentional tort claims. *Stewart-Veal v. District of Columbia*, 896 A.2d 232, 235 (D.C. 2006). "[I]n a case involving the intentional use of force by police officers, a negligence count" can be "submitted to a jury" only if it is "based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself." *District of Columbia v. Chinn*, 839 A.2d 701, 711 (D.C. 2003). So too with negligence claims that are "intertwined with" false arrest claims—they cannot go to a jury if "based" only "on the alleged negligence of the arresting officers in conducting the arrest." *Stewart-Veal*, 896 A.2d at 235. Blair-Scott has not articulated a theory of negligence that goes beyond her false arrest and excessive force claims, instead saying the officers should have ensured "there was a legal justification" for her "arrest." ECF 55 at 38.

10

\*    \*    \*

That Blair-Scott was unhappy about spending a night in jail after—as it seems to have turned out here—the officers made a mistake is entirely understandable, and the Court does not discount that feeling. But based on the undisputed facts, the officers' conduct comported with the Constitution and D.C. law. The defendants' motion for summary judgment, ECF 54, is therefore **GRANTED**. A separate order accompanies this memorandum opinion.

    **SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: July 29, 2026